[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1079 
Appellant, Chester Eugene Hickman, was indicted by the Dale County grand jury on three counts of robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. He was convicted as charged in each count, after a jury trial, and was sentenced to 30 years' imprisonment in each of the three cases, with the sentences to run concurrently.
The state's evidence showed that appellant, while armed with a small pistol, robbed Moore's Grocery, on October 3, 1987, and on October 13, 1987, and robbed Harris Mini Mart on October 19, 1987; and that his modus operandi was similar in each case, as was his attire. One peculiar feature of his attire was red-rimmed, "childlike" sunglasses. Appellant denied any involvement in the robberies, and offered an alibi defense. Appellant raises two issues on appeal.
 I.
First, appellant contends that the trial court committed reversible error by denying his motion to suppress evidence seized from his person at the time he was stopped and searched, as well as evidence obtained subsequently, on the ground that they were the fruit of an illegal search. We do not agree.
Three robberies of grocery stores in the community occurred within 16 days. The similarities in the manner in which the robberies were carried out, and the description of the robber in each case indicated that the crimes were perpetrated by the same person. The robber's dress — dark pulled down cap, gray sweater, blue jeans, and red-rimmed sunglasses — and his unusually large hands and fingernails had made strong impressions on the victims of the robberies.
On October 20, 1987, one day after the third robbery, appellant entered the Big Little Convenience Store. His appearance and attire met the general description of the suspect in the three robberies. His actions in the store were similar to the actions of the robbery suspect. The clerk in the store became suspicious of him when she noticed what appeared to be a small pistol under his shirt at the waist. A customer came in, and appellant left. The clerk then called one of the robbery victims on the telephone and described appellant's appearance. She described him as being "about 5'9" with a hat pulled down over his face and red-rimmed sunglasses on" with "very large hands and there was something wrong . . . different about his hands." When the description was given the robbery victim, she immediately said, "That's him." The victim then notified the police.
Officer Tony Spivey, a criminal investigator with the Ozark Police Department, heard a radio dispatch describing the person who had been in the Big Little Convenience Store, and the description given fit the suspect in the robberies. Spivey also learned, from the dispatch, that the person appeared to have a pistol under his shirt at the waist and was wearing red-rimmed sunglasses. Spivey first went to the Big Little Convenience Store and verified the information he had heard on the radio transmission, and then he began looking for the suspect. Shortly thereafter, he came upon appellant nearby and, as he passed appellant, he looked in his rear-view mirror and observed appellant's hands moving about his waist area. Appellant's appearance corresponded to the description he had been given, except that he was not wearing sunglasses. Spivey exited his automobile and approached appellant. He identified himself and asked appellant for identification. He noticed a "bulge" under appellant's shirt and asked him if he had a weapon, and appellant said he did not. He *Page 1080 
asked appellant, "Do you mind if I pat you down for a weapon?" Appellant did not object. No weapon was discovered under appellant's shirt; however, Spivey continued to frisk appellant and discovered a small deringer pistol in the leg of his trousers at the knee. It contained no bullets. Spivey asked appellant if he had a permit to carry the pistol, and he said he did not. Spivey arrested appellant for carrying a concealed weapon, read him his Miranda rights, and transported him to the police station. Sometime during appellant's detention, Spivey seized a pair of red-rimmed "childlike" sunglasses, which was sticking out of appellant's back pocket. Subsequently, two of the robbery victims identified appellant as the robber, from photographic lineups. All three of the robbery victims identified him in live lineups and in court.
A police officer may, in appropriate circumstances and in an appropriate manner, approach and stop a person for purposes of investigating possible criminal behavior, even though there is no probable cause to make an arrest and, for his own protection if he reasonably believes the person to be armed, may conduct a limited protection search of the person's outer clothing for concealed weapons. Adams v. Williams, 407 U.S. 143,92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); 4 C. Torcia, Wharton'sCriminal Evidence § 717 (14th ed. 1987); Ala. Code (1975), §15-5-30. The detaining officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. United States v. Cortez, 449 U.S. 411,101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The justification for the investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. Michigan v. Summers,452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); United States v.Cortez; Terry v. Ohio. The basis for the detention may be based on direct police observation of suspicious conduct, information from informants, presence near a recently reported crime, or information communicated by way of police channels concerning past criminal conduct, or any combination thereof. W. LaFave, 3Search and Seizure, § 9.3 (1987). Assuming a valid stop, if the officer reasonably believes the person to be armed and dangerous, a limited search of the person for weapons may be justified. Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338,62 L.Ed.2d 238 (1979); Spradley v. State, 414 So.2d 170
(Ala.Cr.App. 1982); Terry v. Ohio; W. Lafave, supra, at §§ 9.1-9.6.
After reviewing the facts of this case with the above legal principles in mind, we conclude that the police officer had reasonable suspicion upon which to base an investigatory stop of appellant in the light of the facts known to the officer at the time. The investigatory stop was justified by specific and articulable facts which reasonably warranted the intrusion. The officer possessed a particularized and objective basis for suspecting the person he was stopping of having been involved in criminal activity, i.e., three recent robberies.
The description furnished Officer Spivey by the radio transmission, as well as by the clerk in the Big Little Convenience Store, fit the description of appellant, as well as the description of the robbery suspect. Officer Spivey, through his own investigation, was aware of the description of the suspect in the three robberies. The fact that the person in the Big Little Convenience Store was reported to be wearing red-rimmed sunglasses was of particular importance. The officer was fully justified under the circumstances in stopping appellant in order to determine his identity and to maintain the status quo momentarily while obtaining more information.
Since the investigatory stop was justified, we conclude that Officer Spivey was authorized to make a limited protective search of appellant for weapons to protect himself from attack by a suspect he had every reason to believe was armed and dangerous. He had reason to believe that the person stopped had committed three *Page 1081 
recent armed robberies. He had information that, only a short time before and a short distance away, the person had what appeared to be a small pistol under his shirt near his waist. He had observed, just before stopping the person, movement of hands in the waist area, as if the person were trying to push a pistol down the leg of his trousers. He observed a bulge in the person's shirt in the area of the waist. The search or pat down for weapons was reasonable and fully warranted. During the investigative stop, Officer Spivey observed a pair of "childlike" red-rimmed sunglasses sticking out of the person's back pocket, which he seized at some point. If this seizure occurred after appellant's arrest, the seizure of the sunglasses was proper as being evidence of the commission of crimes discovered in a search incident to a lawful arrest.Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034,23 L.Ed.2d 685 (1969).
Upon finding the pistol and determining that appellant had no permit or authority to carry a pistol, the officer had probable cause to arrest, and did arrest, appellant for carrying a concealed weapon. See Adams v. Williams; Spradley v. State,Butler v. State, 380 So.2d 381 (Ala.Cr.App. 1980); § 13A-11-50. When an arrest is made, it is reasonable for the arresting officer to search the person arrested for weapons and to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. Id. If the seizure of the sunglasses occurred prior to the arrest, they, as well as appellant's cap, which he was suspected of wearing during the robberies, were properly admitted, as they were evidence of crime discovered in plain view during a valid investigatory stop and search for weapons. While police may not search for evidence during an investigative stop, Michigan v. Long,463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), they may seize any evidence in plain view. United States v. Hensley,469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); United Statesv. Denney, 771 F.2d 318 (7th Cir. 1985). C. Torcia, supra, at § 718.
Appellant's motion to suppress was properly denied.
 II.
Second, appellant contends that the state failed to prove venue in reference to the robbery of Harris Mini Mart, charged in Count III of the indictment. We agree. Timely objection was made by motion for judgment of acquittal at the conclusion of the state's case-in-chief, and the failure to prove venue as to Count III was specifically brought to the attention of the trial court. Proof of venue is necessary to sustain a conviction. Ex Parte Jones, 519 So.2d 589 (Ala. 1987); Lewis v.State, 461 So.2d 9 (Ala. 1984). See also Stokes v. State,373 So.2d 1211 (Ala.Cr.App. 1979), cert. denied, 373 So.2d 1218
(Ala. 1979).
We have searched the record, and we do not find sufficient evidence, either direct or circumstantial, to establish that the robbery of Harris Mini Mart on October 19, 1987, charged in Count III, occurred in Dale County. Thus, the trial court committed reversible error in overruling appellant's motion for judgment of acquittal as to Count III of the indictment.
We affirm the convictions and sentences for robbery in the first degree as to Counts I and II of the indictment, but reverse the conviction for robbery in the first degree as to Count III of the indictment and render judgment for appellant on that count. Burks v. United States, 437 U.S. 1,98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Ex parte Jones.
AFFIRMED AS TO COUNTS I AND II; REVERSED AND RENDERED AS TO COUNT III.
All Judges concur. *Page 1082