Reginald Dale Peters was indicted for trafficking in marijuana, a violation of § 13A-12-231, Ala. Code 1975. He filed a motion to suppress the evidence that resulted in his arrest, which was found in his vehicle, arguing that the evidence was the result of an illegal search and seizure. After a hearing, the trial court denied his motion. Peters then pleaded guilty to the offense, reserving the right to appeal the trial court's denial of his motion to suppress. He was sentenced to 10 years' imprisonment and was ordered to pay a $50,000 fine, a $1,000 Drug Demand Reduction Act fee, a $50 crime victims assessment, and court costs. This appeal followed.
At Peters's suppression hearing, State Trooper Thad Chandler testified that on May 10, 2001, he and Deputy Brock were patrolling Interstate 20, when he noticed a Chevrolet Silverado truck with a Texas license plate following another vehicle too closely. He turned on his emergency lights and stopped the truck. Trooper Chandler approached the truck and asked Peters to exit the truck and produce his driver's license. Trooper Chandler explained to Peters the reason for the stop. According to Trooper Chandler, Peters seemed agitated. Trooper Chandler testified that he had received training in looking for signs of human behavior that indicate criminal activity. Trooper Chandler testified that when he made the traffic stop, nothing initially indicated criminal activity. He became suspicious when he told Peters he was going to receive only a warning — not a traffic ticket — because Peters still seemed agitated.
Trooper Chandler had Peters sit in his patrol car while he wrote out the warning ticket. Trooper Chandler testified that in an effort to reduce the tension, he asked Peters where he was traveling. Peters told him that he was going to Myrtle Beach, South Carolina. At this time, Deputy Brock was speaking with the passenger in the truck. Trooper Chandler said to Peters, "I see you have your wife with you today." (R. 11.) Trooper Chandler said that his comment seemed to agitate Peters more. Peters said, "No, it's not my wife. It's a friend of mine." (R. 11.) Peters told Trooper Chandler that his wife had remained in Texas because she was having surgery or had had surgery. Trooper Chandler testified that at this time he concluded the traffic stop. Peters went to get out of the police vehicle. Trooper Chandler asked Peters if he would please sign the warning and receive his copy. Trooper Chandler testified that Peters then took the form and signed it abruptly. After signing the warning, Peters again went to get out of the vehicle. Trooper Chandler said, "Mr. Peters, if you will, please allow me to give you your copy." (R. 12.) Trooper Chandler testified that in his experience, a traffic offender's trying to exit the patrol car before the citation is *Page 453 
complete is a key indicator of criminal activity. Trooper Chandler gave Peters his copy of the warning. Peters got out of the vehicle and began walking to his truck.
At this point, Trooper Chandler got out of the vehicle and said, "Mr. Peters, may I talk to you a moment more?" (R. 12.) Trooper Chandler testified that Peters sharply said, "What? Yes." (R. 12.) Trooper Chandler asked Peters if there was anything illegal in his truck. Peters said, "I travel up and down this interstate one hundred — I have done this one hundred times. I have been stopped by law enforcement and no one has ever asked me to search my truck." (R. 12.) Trooper Chandler told Peters that he did not ask him if he could search his truck but only asked him if he had anything illegal. Peters told him that he did not. Trooper Chandler asked him if he had any marijuana in his vehicle. Trooper Chandler testified that Peters's response alarmed him. He said Peters looked down to the ground and dropped his chin to his chest, which Trooper Chandler believed to be clues that Peters was being deceptive. Peters said, "No. No. No." (R. 33.) Trooper Chandler then asked Peters if he could search the vehicle. Peters refused consent and stated that he did not have time. Trooper Chandler told him that that was fine, that he was free to leave, but that he was detaining the truck so the canine unit could make a sweep of the vehicle.
The canine unit arrived a few minutes later and made a sweep of the vehicle. The canine alerted to the tailgate of the truck. Trooper Chandler directed Peters to open the camper shell on the truck. Peters said, "That dog's lying." (R. 17.) He continued, "I've seen those cop shows. Y'all can make those dogs do what you want them to do." (R. 17.) Peters said he did not have a key to open the top. A second canine unit arrived and also alerted to the tailgate. An officer then opened the camper shell. Trooper Chandler saw two large, duffle bags. He placed his hand on the bags and felt a block-like substance in each one. Based on his experience, Trooper Chandler believed that the blocks were illegal drugs. He opened the bags and saw blocks of vacuum-sealed green leafy plant material, later determined to be marijuana. At some point, Deputy Brock, who had spoken with the passenger, told Trooper Chandler that the passenger said they were traveling to Augusta, Georgia. However, Trooper Chandler said that this occurred after the traffic citation portion of the stop had been concluded. The only other testimony at the suppression hearing was that of Wesley Clark, Jr. Clark established the chain of custody of the marijuana.
Peters argues that the marijuana should have been suppressed because, he argues, Trooper Chandler did not have reasonable suspicion for the canine unit to search the truck. Peters argues that the scope of the stop should have been limited to what was necessary to issue the warning citation for the traffic violation. This Court has stated:
 "Once the traffic offender signs the UTTC [Uniform Traffic Ticket and Citation], the arresting officer is to `forthwith release him from custody.' § 32-1-4(a)[, Ala. Code 1975]. The officer may further detain the driver only if he has probable cause to arrest the driver for some other non-traffic offense, see Hawkins v. State, 585 So.2d 154 (Ala. 1991), or has a reasonable suspicion of the driver's involvement in some other criminal activity justifying further detention for investigatory purposes under Terry v. Ohio[, 392 U.S. 1 (1968)], see United States v. Tapia, 912 F.2d 1367 (11th Cir. 1990). *Page 454 
 "`Reasonable suspicion is a less demanding standard than probable cause.' Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). However, reasonable suspicion exists only if the officer has `specific, particularized, and articulable reasons indicating that the person [stopped] may be involved in criminal activity,' Hickman v. State, 548 So.2d 1077, 1080 (Ala.Cr.App. 1989). `To determine whether reasonable suspicion existed for a particular stop, the totality of the circumstances, as known to the officer at the inception of the stop, [or, in this case, at the time of the continued detention,] must be considered.' Arnold v. State, 601 So.2d 145, 149
(Ala.Cr.App. 1992) (emphasis added [in Washington]). Accord Lamar v. State, 578 So.2d 1382, 1385
(Ala.Cr.App.), cert. denied, 596 So.2d 659 (1991)."
State v. Washington, 623 So.2d 392, 395-96 (Ala.Crim.App. 1993).
Trooper Chandler's testimony at the suppression hearing clearly established that he had probable cause to stop Peters and effect a noncustodial traffic arrest for the offense of following a vehicle too closely. Trooper Chandler testified that Peters appeared to answer his questions truthfully and that he signed the Uniform Traffic Ticket and Citation ("UTTC"). The question is whether Trooper Chandler had the necessary reasonable suspicion to continue to detain Peters after Peters had signed the UTTC.
It appears that the only reasons Trooper Chandler gave for detaining Peters were that Peters acted nervous, appeared agitated, and tried to exit the patrol car before signing the warning citation or receiving his copy. "`[T]here is no constitutional requirement of reasonable suspicion as a prerequisite for seeking consent to search.'" State v. Washington, 623 So.2d at 397, quoting State v. Abreu, 257 N.J. Super. 549, 555,608 A.2d 986, 989 (1992). As was the case in Washington, it is clear from Trooper Chandler's questions concerning any illegal activity that Trooper Chandler went beyond merely asking for consent to search and initiated, instead, an investigative detention.
"[I]nformation obtained . . . during this further detention cannot be considered in evaluating whether the trooper had reasonable suspicion to further detain the defendant in the first place." Washington at 397. A defendant's ultimate refusal to consent to a search of the vehicle cannot be considered as a factor in the officer's determination of reasonable suspicion. State v. Washington, supra. Therefore, we are left with only the factors enumerated by Trooper Chandler at the suppression hearing that he considered before the detention: (1) that Peters was nervous, (2) that Peters appeared to be agitated, and (3) that Peters tried to exit the patrol car without signing the traffic citation or receiving his copy of the citation.
The prevailing view is that "unless coupled with additional and objectively suspicious factors, nervousness in the presence of a police officer and/or failure to make eye contact do not establish reasonable suspicion to believe that the person is engaged in criminal activity."Washington at 398. The fact that Peters was agitated at being stopped is insufficient to supply a reasonable suspicion of criminal activity. Likewise, the fact that Peters tried to get out of the patrol car without signing his citation or receiving a copy of it does not rise to the level of reasonable suspicion. Peters may have thought the traffic stop was concluded, and it might not have occurred to him that he needed to sign the citation or receive his copy. *Page 455 
Even if we concluded that the detention did not begin until Trooper Chandler told Peters that he was free to go but that he was going to detain the truck for the canine unit, and thereby allow us to take into consideration the other factor of avoiding eye contact, the addition would not establish the reasonable suspicion necessary to justify Trooper Chandler's detention. "A detaining officer `must be able to articulate something more than an "inchoate and unparticularized suspicion or `hunch.'" [Terry v. Ohio, 392 U.S.] at 27, 88 S.Ct. [at] 1883 [(1968)].'"Washington at 399. Since we cannot determine from the record at what moment Trooper Chandler learned that the passenger had given his partner a different travel destination, we cannot say that this factor was known to Trooper Chandler at the time of the detention. However, even if Trooper Chandler had had that information before he detained Peters, it still would not be sufficient to establish reasonable suspicion. South Carolina and Georgia are not in opposite directions of one another. It is not uncommon for people to ride together but yet have different destinations. The officers did not inquire further into this discrepancy to ascertain the reason behind the discrepancy. Thus, the mere fact that two people in the same vehicle gave different travel destinations does not change our conclusion that Trooper Chandler did not have sufficient reasonable suspicion to detain Peters.
The State argues that this case is more akin to Owen v. State,726 So.2d 745 (Ala.Crim.App. 1998), than to State v. Washington,623 So.2d 392 (Ala.Crim.App. 1993). We disagree. In Owen, this Court held that the trooper had reasonable suspicion to believe that Owen was engaged in criminal activity based upon Owen's nervousness and evasive behavior. The State claims that Peters was nervous, agitated, and evasive; however, it does not provide this Court with any examples of how Peters exhibited evasiveness. Trooper Chandler did not even claim that Peters was evasive. There is no indication that Peters exhibited any evasive behavior. In Owen, this Court cited many examples of Owen's evasive behavior. In Owen, the defendant, upon being pulled over by the officer, immediately exited his vehicle and went to the officer's vehicle. Owen tried to block the officer's view of his vehicle by moving into the officer's line of sight. Owen also lied about his arrest record. When the officer asked Owen questions about his vehicle, Owen would ask questions about the officer's vehicle. In this case, Trooper Chandler testified that Peters answered all of his questions truthfully. Peters did not get out of his vehicle until Trooper Chandler asked him to do so. There is no evidence that Peters tried to block Trooper Chandler's view of the vehicle. None of the factors this Court cited in Owen as showing evasiveness is present in this case. There is no evidence indicating that Peters was evasive, and Trooper Chandler does not claim that Peters was evasive. Thus, Owen has little application to this case.
Therefore, we hold that the trial court erred in denying Peters's motion to suppress. For the foregoing reasons, the judgment is reversed and the cause remanded to the Cleburne Circuit Court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and SHAW, J., concur.
BASCHAB and WISE, JJ., dissent, without opinion. *Page 456