**Matthew FORD, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1946–03.**

Court of Criminal Appeals of Texas.

March 9, 2005.

**9.** *Alley, supra* note 3 at 868.

**490**

Brian W. Wice, Houston, for appellant.

Shirley Cornelius, Assistant District Attorney, Houston, Matthew Paul, State's Attorney, Austin, for State.

*OPINION*

KEASLER, J., delivered the opinion of the Court in which MEYERS, PRICE, JOHNSON, HERVEY, and HOLCOMB, JJ., joined.

In a motion to suppress evidence, Ford asserted that his initial detention for failure to maintain a proper following distance was not supported by reasonable suspicion. The trial court overruled Ford's motion. The court of appeals held the stop was valid by concluding that the evidence was sufficient to establish reasonable suspicion. Having found the record devoid of specific, articulable facts to support the officer's conclusion, we reverse.

## I. Factual and Procedural History

Texas State Trooper Andrew Peavy pulled Matthew Ford's vehicle over for following another car too closely on Highway 290 outside of Houston in violation of Texas Transportation Code § 545.062(a). Section 545.062(a) provides,

> An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.[1]

When Ford lowered his passenger-side window, Peavy noticed a strong odor of marijuana. Peavy took Ford's driver's license and returned to his patrol car to run a check on Ford's license and to issue a warning ticket for the traffic violation. He approached the car again and asked Ford to exit his vehicle. Ford initially refused Peavy's request for permission to search his car. Peavy testified that while he was waiting for backup Ford consented to a

---

1. TEX. TRANSP. CODE ANN. § 545.062(a) (Vernon Supp.2004).

search. After another state trooper arrived, Peavy conducted a search of Ford's car. Peavy's search produced a bottle containing codeine, and another bottle containing codeine mixed with soda. Ford was then placed under arrest. When Peavy could not discover the source of the marijuana odor, he requested the assistance of a canine unit. The canine unit's search revealed 55 grams of marijuana in the car's console.

Ford was subsequently indicted for felony possession of codeine, a controlled substance, weighing at least 400 grams. Ford filed a motion to suppress evidence challenging, among other things, the reasonable suspicion required for the initial detention. At the suppression hearing, the trial court heard testimony from Peavy, the officer who responded to Peavy's request for back-up, and Ford himself. Peavy, the only officer whose testimony related to the facts surrounding the stop, testified to the events leading up to the stop:

Q: And on September 2nd of 2001 did you notice something that caught your eye around 5:47 at night?

A: Yes, ma'am. I was patrolling and I saw a maroon utility vehicle following too close behind—I was patrolling 290 westbound. I saw a maroon GMC or Chevy utility vehicle following a white car, following too close.

Q: And where were you when you noticed this vehicle?

A: I was directly behind him.

Q: And at the time that you noticed this, what did you do?

A: I activated my emergency overheads and the vehicle pulled over.

. . .

Q: And when you were approaching the vehicle, what were your intentions before you approached the vehicle?

A: To talk to him about his violation he had committed.

Q: Which violation is that?

A: Following too close.

This quoted portion was the only testimony given by Peavy describing the circumstances leading up to Ford being stopped. There was no other testimony relevant to Ford's driving. Peavy's testimony also established that he was a certified peace officer serving the Department of Public Service for four years enforcing traffic and criminal laws. The remainder of his testimony focused on the search of Ford's vehicle and whether Ford consented to the search. Ford also testified at the suppression hearing. Although he testified that a car "squeezed in" between his car and the car in front of him, Ford stated that he was not following too close.

Concluding that the traffic stop was supported by reasonable suspicion, the trial judge denied Ford's motion to suppress. Under a plea agreement, Ford pled guilty to a reduced second-degree felony possession of a controlled substance charge. The court deferred adjudication and placed Ford on probation for nine years with a $500 fine. Ford appealed the trial court's order denying his motion.

## II. Court of Appeals

The Court of Appeals overruled Ford's point of error and found that in light of the evidence presented at the suppression hearing, the trial court did not err in denying the motion to suppress.[2] The court

---

2. *Ford v. State,* No. 01–02–00643–CR, slip op. at 10–11, 2003 WL 22310499, at *3 (Tex.App.- Houston [1st Dist.] 2003, pet. granted).

stated that "Trooper Peavy's experience and training qualified him to make a judgment on whether, 'considering the speed of the vehicles, traffic and the conditions of the highway,' [Ford] was following the car in front of him too closely.".[3] The court stated "Peavy testified that he saw [Ford] following another car at a distance that Peavy believed was insufficient and thus, in violation of the statute." The court also stated that the trial court was entitled to believe the officer's testimony while discounting Ford's testimony. The court additionally reasoned that Peavy's determination that Ford had violated section 545.062(a) "went unchallenged at the suppression hearing." In further illustrating this point, the court highlighted Ford's failure to "press Trooper Peavy on what factors might have led Peavy to make the determination that [Ford] was following too closely" or "attempt to discredit Peavy's expertise or qualifications to make such a determination."[4]

### III. Analysis

#### Burden of Proof

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.[5] A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.[6] Once the defendant has made this showing, the burden of proof shifts to the State where it is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.[7]

In this case, the suppression hearing began with the State stipulating that this case involved a warrantless arrest. Because the stipulation shifted the burden of proof to the State, whether Ford attempted to refute the existence of sufficient suspicion is irrelevant to the reasonable-suspicion analysis. Contrary to both the court of appeals's and the dissent's position, Ford was not charged with the responsibility of challenging whether Peavy had specific facts warranting the detention. The State bore the burden of establishing the reasonableness of the warrantless detention.[8]

#### Reasonable Suspicion

An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law.[9] Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity.[10] This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.[11] A reasonable-suspicion determination is

3. *Id.*

4. *Id.*

5. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim. App.1986).

6. *Bishop v. State,* 85 S.W.3d 819, 822 (Tex. Crim.App.2002).

7. *Id.*

8. *See id.*

9. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex. Crim.App.2002).

10. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim.App.2001).

11. *Id.*

made by considering the totality of the circumstances.[12]

In evaluating the totality of the circumstances, we use a bifurcated standard of review. We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor.[13] Because the trial court did not make explicit findings of fact in this case, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record.[14]

### Application

Ford asserts that the court of appeals erred in holding the evidence presented at the suppression hearing supported the trial court's finding of reasonable suspicion. We agree.

The court of appeals stated that "Trooper Peavy testified that he saw [Ford] following another car at a distance that Peavy believed was insufficient and, thus, in violation of the statute." While this may be a permissible interpretation of Peavy's "following too close" testimony, it does not change its conclusive character into specific, articulable facts. And attempting to do so requires a strained reading of the record. As indicated from Peavy's testimony, Peavy only stated that Ford was "following too close." The record reveals an absence of any facts allowing an appellate court to determine the circumstances upon which Peavy could reasonably conclude that Ford actually was, had been, or soon would have been engaged in criminal activity.[15] Instead, the trial court was presented only with a conclusory statement that Ford was violating a traffic law. We do not quarrel with the notion that Peavy may have in fact believed that Ford was following another car too closely. Nor do we dispute that the trial judge is free to believe or disbelieve Peavy's testimony. But without specific, articulable facts, a court has no means in assessing whether this opinion was objectively reasonable.

When a trial court is not presented with such facts, the detention cannot be "subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances."[16] And "[w]hen such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits."[17] Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry*'s reasonable suspicion protection. If this Court were to hold as the dissent suggests, we would be removing the "reasonable" from reasonable suspicion. Therefore, we adhere to the principle that specific, articulable facts are required to provide a basis for finding reasonable suspicion.[18] Mere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis.

The court's opinion further reasoned that the evidence regarding Peavy's

12. *Id.*

13. *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997).

14. *Balentine*, 71 S.W.3d at 768.

15. *See Garcia*, 43 S.W.3d at 530.

16. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

17. *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

18. *See Balentine*, 71 S.W.3d at 768.

training, experience, and his duties enforcing traffic laws qualified him "to make a judgment as to whether, 'considering the speed of the vehicles, traffic and the conditions of the highway,' [Ford] was following the car in front of him too closely." It is true that law enforcement training or experience may factor into a reasonable-suspicion analysis.[19] The United States Supreme Court has stated, "objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion."[20] But reliance on this special training is insufficient to establish reasonable suspicion absent objective factual support.[21]

### Conclusion

The evidence before the trial court indicated only that in Peavy's judgment, Ford was following another car too closely in violation of Transportation Code § 545.062(a). The State failed to elicit any testimony pertinent to what facts would allow Peavy to objectively determine Ford was violating a traffic law in support of his judgment. Even viewing the evidence in the light most favorable to the trial court's ruling, the record does not support a finding of reasonable suspicion. Because the record fails to reveal any objective facts, we hold that the trial court erred in denying Ford's motion to suppress.

We reverse the judgment of the court of appeals and remand the case to the trial court so that Ford can answer the charges in the indictment.

KELLER, P.J., filed a dissenting opinion in which WOMACK and COCHRAN, JJ., joined.

KELLER, P.J., dissenting in which WOMACK and COCHRAN, JJ., joined.

This case presents a difficult question: how specific must an officer's testimony about his observations be in order to support a finding of reasonable suspicion? At issue here is an officer's opinion, based on his observations, that the accused was "following too close." I would hold that the officer's opinion constituted *prima facie* evidence sufficient to support a finding of reasonable suspicion, but the defendant or the trial court could have requested greater specificity, and if greater specificity were not forthcoming, then the evidence would have been subject to suppression. Because greater specificity was not requested in this case, I would affirm the trial court's judgment.

In *Terry v. Ohio*, the fountainhead case on the "reasonable suspicion" standard applicable to "stops," the Supreme Court said that a police officer had reasonable suspicion if he could "point to specific and articulable facts which, if taken together with rational inferences from those facts, reasonably warrant" the intrusion in question.[1] The requirement of "specific and articulable facts" serves the function of subjecting the police officer's actions to meaningful judicial review:

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particu-

**19.** *U.S. v. Cortez*, 449 U.S. 411, 419, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

**20.** *Id.*

**21.** *See id.*

**1.** 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

lar search or seizure in light of the particular circumstances.[2]

That meaningful judicial review carries over to the appellate context, which requires a *de novo* review of the circumstances relied upon to support a trial court's finding that reasonable suspicion did indeed exist.[3] But it is also true that appellate courts must give "due weight" to the "factual inferences drawn by resident judges and local law enforcement officers."[4] Texas recognized these principles in *Guzman v. State*, where we explained that, in the search and seizure context, "almost total deference" should be given to questions of historical fact, and application-of-law-to-fact questions turning on credibility and demeanor, while other application-of-law-to-fact questions are reviewed *de novo*.[5]

Whether the bare testimony "he was following too close" is sufficient to support a trial court's finding of reasonable suspicion has not been squarely addressed in any jurisdiction. There are a handful of published appellate opinions in which "following too close" or "tailgating" was at issue, and in each of these cases, the appellate court found the observed conduct to be sufficient to show reasonable suspicion or probable cause.[6] In two of these cases, the court recited a specific fact testified to by the officers in support of their conclusions: following less than two seconds behind another vehicle.[7] In the other cases the appellate court simply remarked that the officer had validly pulled over the accused on the basis of an anti-tailgating traffic law.[8] None of these cases addressed whether the testimony in question was sufficiently specific.[9]

The testimony at issue is an opinion based on a witness' perception. As such, it implicates the concerns underlying Texas Rule of Evidence 701, which provides that the opinion of a witness is admissible if it is "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."[10] Our Rule 701 is based on its federal counterpart, which was adopted in part due to the "practical impossibility" of determining what is a "fact," as opposed to mere opinion, "demonstrated by a century of litigation."[11] The advisory committee for the

---

2. *Id.*

3. *United States v. Arvizu,* 534 U.S. 266, 275, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

4. *Id.* at 273–274, 122 S.Ct. 744.

5. 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

6. *United States v. Perez,* 200 F.3d 576, 577–579 (8th Cir.2000); *United States v. Lyton,* 161 F.3d 1168, 1169–1170 (8th Cir.1998); *United States v. Beck,* 140 F.3d 1129, 1132–1134 (8th Cir.1998); *United States v. Rivera,* 867 F.2d 1261, 1262–1264 (10th Cir.1989); *Peters v. State,* 859 So.2d 451, 452–454 (Ala. Crim.App.2003); *State v. Cohen,* 549 So.2d 884, 886 (La.App.1989), *cert. denied,* 559 So.2d 135 (La.1990); *State v. McGinnis,* 8 Neb.App. 1014, 1016–1020, 608 N.W.2d 605, 608, 610 (2000).

7. *Perez,* 200 F.3d at 578; *McGinnis,* 608 N.W.2d at 608.

8. *Lyton,* 161 F.3d at 1169–1170; *Beck,* 140 F.3d at 1132–1134; *Rivera,* 867 F.2d at 1262–1263; *Peters,* 859 So.2d at 452; *see also Cohen,* 549 So.2d at 886 (rejecting challenge against constitutionality of anti-tailgating statute). The discussion in *Peters* strongly suggests that the officer did not give more specific testimony, but the court's remark about the sufficiency of this testimony to support the stop was *dicta. See Peters,* 859 So.2d at 452–454.

9. *See* previously cited cases.

10. Tex.R. Evid. 701.

11. Advisory Committee Notes, Fed.R.Evid. 701.

federal rules cited McCormick's treatise for the proposition that "a standard for permitting opinions and conclusions has proved too elusive and too unadaptable for purposes of satisfactory judicial administration." [12] As a result of the immense difficulty in sorting "fact" from "opinion," a recent edition of McCormick's treatise has concluded that trial courts should be "accorded a wide range of discretion at least in classifying evidence as 'fact' or 'opinion' and probably in admitting evidence even where found to constitute opinion." [13]

We have recognized the role of Rule 701 in permitting the admission of opinions, where the opinion constitutes a "shorthand rendition of the facts." [14] These types of opinions, sometimes also called "collective facts," are permitted because a "catalogue of particulars may be inadequate to convey important ideas that lay witnesses are competent to express." [15] The opinion "may sum up and give the full flavor and character of the particulars (to which the witness also testifies) or may substitute for a catalogue the witness may be unable to provide." [16] "Prototypical" examples of this type of opinion include those relating to "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light and darkness, sound, size, weight, [and] *distance.*" [17] Other common examples include speed [18] and intoxication. [19]

Authority considering the intersection of Rule 701 with search and seizure law appears to be sparse, but one interesting case was decided in Minnesota. In *State v. Nolting,* a law enforcement agent requested a warrant to search a particular piece of mail based in part on his declaration that "I was advised that the parcel was found [in the post office by a mail clerk], who has discovered *numerous* parcels of this type containing controlled substances." [20] Although the defendant argued that the clerk's statement was conclusory and should be given no weight, the Supreme Court of Minnesota found it to be a legitimate opinion of the type covered by Federal Rule of Evidence 701. [21] The court remarked:

> The conclusion drawn by the mail clerk is a simple one, drawn directly from his personal sensory experience. It is the kind of conclusion that courts and juries may legitimately credit in resolving factual questions.
>
> \*　　　\*　　　\*
>
> If the affidavit had set forth the respects in which the parcel resembled the earli-

---

12. *Id.*

13. McCormick on Evidence, 5th ed., § 11, p. 46 (1999).

14. *Solomon v. State,* 49 S.W.3d 356, 364 (Tex. Crim.App.2001); *Fairow v. State,* 943 S.W.2d 895, 900 (Tex.Crim.App.1997).

15. Mueller & Kirkpatrick, Federal Evidence, 2nd ed., § 346 (1994).

16. *Id.*

17. Advisory Committee Notes, 2000 Amendments to Rule 701 (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1196 (3rd Cir.1995)) (bracketed material and emphasis added).

18. Mueller & Kirkpatrick, *supra; Ho v. United States,* 331 F.2d 144 (9th Cir.1964).

19. Mueller & Kirkpatrick, *supra; United States v. Lechuga,* 888 F.2d 1472, 1480 (5th Cir.1989); *Loof v. Sanders,* 686 P.2d 1205, 1212–1213 (Alaska 1984) (citing *Esquivel v. Nancarrow,* 104 Ariz. 209, 450 P.2d 399, 403 (1969)).

20. 312 Minn. 449, 450–451, 254 N.W.2d 340, 342 (1977) (bracketed material substituted for original, emphasis in original).

21. *Id.* at 454–455, 454 n. 3, 254 N.W.2d 340.

er packages, the magistrate might have been more certain of the clerk's conclusion. But we think detailing the basis of this conclusion, while desirable, goes to its probative value to establish probable cause and not to whether the conclusion can be considered by a magistrate.[22]

The fact that a Rule 701 type of opinion can be considered in determining a search and seizure question does not necessarily mean that the opinion is sufficient to support the trial court's resolution of the issue. But a key to how to review this type of evidence may be found in one of the reasons that has been given for liberally allowing its admission: abuses can be effectively checked by cross-examination. The federal rules advisory committee explained:

> The rule assumes that the natural characteristics of the adversary system will generally lead to an acceptable result, since the detailed account carries more conviction than the broad assertion, and a lawyer can be expected to display his witness to the best advantage. If he fails to do so, cross-examination and argument will point up the weakness.[23]

The officer's opinion that appellant was "following too close" is a broad factual assertion based on the officer's observations. Substantiating that factual assertion with more detail—the number of car lengths separating appellant's vehicle from the one being followed, or the number of seconds between the time each vehicle passed a fixed point, for example—would be preferable, but the officer's unchallenged assertion of what he observed was a sufficient basis for the trial court to rule as it did. The trial court could reasonably infer from the officer's testimony that he did indeed observe appellant following too closely. The information imparted was enough to convey to the trial court a factual basis for believing that appellant may have broken the law.

Cross-examination might have shown otherwise. If, upon cross-examination, the officer could offer no basis whatsoever for his conclusion that appellant was following too closely, the trial court might then have been required to find that the officer's "following too close" conclusion did not constitute specific, articulable facts to support a stop. Or perhaps cross-examination would have revealed that the officer's definition of "following too close" was not in fact a description of conduct proscribed by the statute in question. On the other hand, cross-examination might have elicited details further supporting the officer's conclusion. The trial court could have chosen to disregard the officer's testimony due to its generality,[24] but it was also within the trial court's discretion to credit the testimony, and under the circumstances present here, I believe the testimony was sufficient to support the trial court's finding of reasonable suspicion.

I respectfully dissent.

---

**22.** *Id.* at 454–455, 254 N.W.2d 340 (ellipsis inserted).

**23.** Advisory Committee Notes, Fed.R.Evid. 701.

**24.** *See State v. Ross,* 32 S.W.3d 853 (Tex. Crim.App.2000). And nothing prevents the trial court from asking the witness for more specificity before deciding to credit the opinion testimony. *See* McCormick, § 11, p. 50 ("provided personal knowledge is adequately established the witness need not recite the observed matters that are the basis of opinion, *although the judge has discretion to require preliminary testimony abut the facts observed* "—emphasis added).