WELCH, Judge.
Keith A. Hebert was charged with possession of a controlled substance, a violation of § 13A-12-212, Ala.Code 1975. He filed a pretrial motion to suppress drug evidence seized during a traffic stop. The trial court denied the motion following a hearing. Hebert then pleaded guilty to the charge, reserving for appeal the trial court’s denial of the motion to suppress. The trial court sentenced Hebert, as a habitual felony offender, to 15 years in prison.

FACTS

The following testimony was presented at the hearing on Hebert’s motion to suppress. Russell County Sheriffs Deputy Charles Hall executed a traffic stop because the driver had failed to signal before making a turn. Hebert was driving the vehicle and Karen Singleton was a passenger. Hall testified that Hebert pulled promptly to the side of the road when Hall activated the blue lights on his cruiser. Hall testified that he ran the license plate on an Internet Web site that “pulls up the person it belongs to,” and that indicated the owner was “a medium threat level.” (R. 6.) He stated that, because of the elevated threat level presented by Hebert indicated on the Web site, he used more caution than he would have had the threat level been lower.
Hall approached the car and obtained Hebert’s license, registration, and proof of insurance. Hebert seemed nervous, Hall said, so he asked Hebert to step out of the car. Hebert complied. Hall asked him whether he had any weapons on his person *921 and Hebert said he had a knife. Hall patted Hebert down and recovered four folding knives. He then directed Hebert to stand at the rear of Hebert’s car. He was not placed in handcuffs. Hall asked Singleton to step out of the car and asked her whether she had any weapons on. her person. Singleton told Hall that she had no weapons, and he then directed her to move to the rear of Hebert’s ear. Hall stated that, while Hebert was standing by the car, he appeared very nervous and “kind of aggressive,” and he moved around a lot. (R. 10.) Hall completed the traffic citation and gave it to Hebert.
Hall testified that, once a citation is issued, he usually releases the motorist, and the motorist is free to leave. At that point in some traffic stops, Hall testified, he sometimes asks for consent to search the cockpit area of the vehicle for officer safety. Hall asked Hebert for permission to search the vehicle, but Hebert refused, said he was leaving, and walked toward his vehicle. Hall testified that he was in fear for his safety because Hebert was trying to get back to his vehicle and because Hall did not know what was in the vehicle. Therefore, Hall stated, he stopped Hebert and told him he was not leaving, handcuffed him, and placed him in the patrol car. Hall told Hebert that he was not under arrest, but that “[h]e was being detained for observation.” (R. 16.) Hall explained the reasons he placed Hebert in handcuffs:
“Because he was trying to — when I told him — I asked him about the weapons and he was acting real nervous and then he said he was leaving and gofing] to the vehicle, I was in fear for my safety. And they teach us that on a traffic stop, anybody can get caught in an area where they can get a weapon, they could do harm to me if I’m by myself trying to get them out of a vehicle.”
(R. 17.) When he testified on cross-examination that he had detained Hebert for officer safety, he again-explained, “I didn’t know what was in the vehicle and the way he was acting when he went towards the vehicle, for officer safety.” (R. 23.) He later stated that he had suspicions of further criminal activity “from how he was acting nervous and wanting to get to the vehicle, and I already found four knives on him, and his past criminal record.” (R. 24.)
Singleton remained at the rear of Hebert’s car. while HalJ handcuffed and detained Hebert. Hall -testified that he asked Hebert and Singleton whether there was anything in the vehicle that he needed to know about before , he searched it for weapons, and Singleton told him there was a glass pipe under the front passenger seat. Hall told Singleton to. get the pipe, and she' walked to the yehicle by herself and reached under the.passenger seat for the pipe, which she then brought back to Hall. Hall was asked on cross-examination whether, when he told Singleton to return to the car .to get the pipe, he was concerned that Singleton could get a gun or other weapon that she could use to hurt him. He testified that he was concerned about officer safety, but that he watched her while she retrieved the pipe.
Hall stated that he believed the pipe was of the type used to smoke methamphetamine, and he noted a white residue inside the pipe. Hall testified that he then asked them whether there was anything else in the vehicle he needed to know about, and Hebert told him that a bag of methamphetamine was under the floor mat on the driver’s side of the vehicle. - Hall walked to the vehicle to retrieve the bag, and he then observed a six-inch hunting knife between the driver’s door and the seat, and two more knives in the cockpit area within arm’s reach of the driver. Hebert claimed *922 ownership of the methamphetamine. Hall arrested him for possession of drug paraphernalia and for possession of methamphetamine. Hall also stated that the pipe provided probable cause to arrest Hebert, and that he would have searched the car and found the methamphetamihe and the knives when the car was searched incident to the arrest even if Hebert had not told him about the methamphetamine.
Singleton testified that as soon as Hall made the traffic stop he asked them to get out of the car, and they got out and walked to the back of the car. She testified that their small dog got out of the car and was running around in the street. She testified that she and Hebert were nervous because the dog was barking and running around. Singleton said that Hall gave Hebert the ticket and returned his license and registration, and they started to walk toward the car so they could leave. Hall then asked for permission to search the car; she said she and Hebert both refused to consent to the search, but, she said, Hall went to the driver’s side of the car and began searching. Singleton testified that Hebert asked Hall why he was searching the car. She said that Hall initially stated he was searching the vehicle for drugs, but he then said he was searching for weapons. He then handcuffed Hebert and placed him in the .back of the patrol car, and he continued to search inside the car. Singleton testified that, while Hall was moving items around inside the car, she told him that she had something in the car, and he told her to get it. She retrieved the glass pipe from beneath the passenger seat and gave it to Hall. She testified that Hall did not then ask them whether there was anything else in the car that he needed to know about, and that Hebert did not tell Hall about the bag of methamphetamine under the seat. Singleton testified that the pipe and the methamphetamine belonged to her, and she said that she informed Hall of this.
After the foregoing testimony was presented, the trial court heard arguments from the parties. The State argued that, because Hebert seemed to be anxious to get back into his vehicle after he received the citation, Hall feared for his safety at that point and decided to further detain Hebert. The State noted that 'Singleton and Hebert told him about the pipe and the methamphetamine, and he said that the pipe provided probable cause to search the vehicle. The State further argued that, regai-dless of what Hebert told him, Hall was going to search the vehicle for additional weapons.
Hebert argued that Alabama law provides that, once a traffic offender signs the traffic citation, he is free to leave and may be fui'ther detained only if the officer has probable cause to arrest him for another offense, or if the officer has a reasonable suspicion that the traffic offender is involved in other criminal activity. He argued that Hall admitted that he initially did not have probable cause to search the vehicle, and that Hebert’s nervousness and desire to return to his vehicle after he received the citation did not provide a reasonable suspicion that he was involved in other criminal activity.
The trial- court denied the motion to suppress.

ANALYSIS

Hebert contends that the trial court erred in denying his motion to suppress because, he says, he had the right to return to his vehicle and to.-refuse Hall’s request to search once Hall issued the citation. He further argues that Hall did not have probable cause to search or reasonable suspicion justifying further detention after the traffic stop concluded, and *923 that, therefore, the warrantless search was unreasonable.
“ ‘In reviewing a trial court’s ruling on a motion to suppress, this Court reviews the trial court’s findings of fact under ah abuse-of-discretion standard of review. .“When evidence is presented ore tenus to the trial court, the court’s findings of fact based on that evidence are presumed to be correct,” Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994); “[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,” Bradley v. State, 494 So.2d 760, 761 (Ala.Crim.App.1985), aff'd, 494 So.2d 772 (Ala.1986); and we make “ ‘all the reasonable inferences and credibility choices supportive of the decision of the trial court.’ ” Kennedy v. State, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting Bradley, 494 So.2d at 761. “[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court.... Absent a gross abuse of discretion, a trial court’s resolution of [such] eonfliet[s] should not be reversed on appeal.” Sheely v. State, 629 So.2d 23, 29 (Ala.Crim.App.1993) (citations omitted). “‘“[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.”’” Ex parte Jackson, 886 So.2d 155, 159 (Ala.2004), quoting State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). A trial court’s ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala.Crim.App. 2000).’ ”, .
C.B.D. v. State, 90 So.3d 227, 237 (Ala.Crim.App.2011), quoting State v. Hargett, 935 So.2d 1200, 1203-04 (Ala.Crim,App.2005).
Resolution of this appeal turns on whether Hebert was lawfully detained after Hall had issued the traffic citation. Established law in Alabama provides that a motorist who has been stopped for a traffic violation is permitted to leave after the officer issues the citation and that any further detention must be based on a legally recognized exception to that general rule. We have stated:
“Once the traffic offender signs the UTTC [Uniform Traffic Ticket and Citation], the arresting officer is to ‘forthwith release him from custody.’ § 32-1-4(a)[, Ala.Code 1975], 'The officer may further detain the driver only if he has ■probable cause to arrest- the driver for some other non-traffic offense, see Hawkins v. State, 585 So.2d 154 (Ala.1991), or has a reasonable suspicion of the driver’s involvement in some other criminal activity justifying further detention for investigatory purposes under Terry v. Ohio [, 392 U.S.1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ], see United States v. Tapia, 912 F.2d 1367 (11th Cir.1990).
“‘Reasonable suspicion is a less demanding standard than probable cause.’ Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). However, reasonable suspicion exists only if the officer has ‘specific, particularized, and articulable reasons indicating that the person [stopped] may be1 involved in criminal activity,’ Hickman v. State, 548 So.2d 1077, 1080 (Ala.Cr.App.1989). ‘To determine whether reasonable suspicion existed for a particular stop, the totality of the circumstances, as known to the officer at the inception of the stop, [or, in this case, at the time of the continued detention,'] must be considered.’ Arnold v. State, 601 So.2d 145, 149 (Ala.Cr.App.1992) (emphasis added [in Washington]). *924 Accord Lamar v. State, 578 So.2d 1382, 1385 (Ala.Cr.App.), cert. denied, 596 So.2d 659 (1991).”
State v. Washington, 623 So.2d 392, 395-96 (Ala.Crim.App.1993), quoted in State v. Hale, 990 So.2d 450, 453 (Ala.Crim.App.2008), and Peters v. State, 859 So.2d 451, 453-54 (Ala.Crim.App.2003).
Hall testified that he did not have probable cause to detain Hebert after he completed the citation. When asked on cross-examination whether he had any suspicion that Hebert was involved in some other criminal activity, Hall replied: “Just from how he was acting nervous and wanting to get to the vehicle, and I already found four knives on him, and his past criminal record.” (R. 24.) None of Hall’s expressed reasons for his concern, alone or combined, provided a reasonable suspicion of further criminal activity that would support Hebert’s continued detention. Peters v. State, presented similar circumstances, and we stated in that case:
“The prevailing view is that ‘unless coupled with additional and objectively suspicious factors, nervousness in the presence of a police officer and/or failure to make eye contact do not establish reasonable suspicion to believe that the person is engaged in criminal activity.’ [State v. Washington, 623 So.2d 392, 398 (Ala.Crim.App.1993).] The fact that Peters was agitated at being stopped is insufficient to supply a reasonable suspicion of criminal activity. Likewise, the fact that Peters tried to get out of the patrol car without signing his citation or receiving a copy of it does not rise to the level of reasonable suspicion. Peters may have thought the traffic stop was concluded, and it might not have occurred to him that he needed to sign the citation or receive his copy.”
859 So.2d at 454.
According to Hall, Hebert was very nervous during the stop, but Hall did not assert that Hebert was uncooperative. Although nervousness and evasiveness, together, can lead to reasonable suspicion, Peters, 859 So.2d at 455, Hall testified only that Hebert had been very nervous, and did not testify that Hebert was evasive during the stop. Furthermore, unlike Peters, Hebert waited until he had received the traffic citation before he began to walk to his car. Moreover, every motorist returns to his vehicle when a traffic stop has been completed, so Hebert’s walk toward his vehicle provided no legal justification for further detention. Hall’s remaining reasons for continuing to detain Hebert— Hebert’s criminal record and the facts that Hebert had been in possession of four knives and that Hall did not know what Hebert might have inside his car — do not constitute the necessary particularized and articulable reasons indicating that Hebert might have been involved in criminal activity. Particularized, articulable reasons are necessary to create a reasonable suspicion of a driver’s involvement in other criminal activity and to support further detention of a driver for investigatory purposes. “A detaining officer ‘must be able to articulate something more than an “inchoate and un-particularized suspicion or ‘hunch.’ ” [Terry v. Ohio, 392 U.S.] at 27, 88 S.Ct. [at] 1883 [(1968)].’” Washington at 399, quoted in Peters, 859 So.2d at 455. Hall articulated nothing more than a hunch.
Therefore, Hall did not have sufficient reasonable suspicion to detain Hebert after the traffic stop had concluded. The methamphetamine and the paraphernalia obtained during that illegal detention should have been suppressed, as Hebert argued in the court below.
The State argues that Hall had been conducting an investigation pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 *925 L.Ed.2d 889 (1968), and that, even after Hall issued the citation, the Terry investigation continued
“based' on the corollary Michigan v. Long [, 463 U.S. 1032 (1983),] sense of concern for officer safety during a Terry encounter. Deputy Hall’s Michigan v. Long continued concern for officer safety was based on: a) the ... automated ‘medium threat level’ computer advisory he received; b) Hebert’s extreme nervousness; c) the fact that Hall’s ‘pat down’ of Hebert had produced at least one pocket knife; and, d) the fact that, by walking away and attempting to reenter his vehicle, Hebert was creating an environment posing a potential threat to officer safety.”
(State’s brief at pp. 13-14) (footnote omitted).
The State then argues that one of two scenarios existed: either Hall was conducting a permissible search of the interior of Hebert’s car pursuant to Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), when Singleton voluntarily produced the drug paraphernalia, which then provided probable cause for the continued search of the car and the seizure of the package of methamphetamine; or that during the time Hall had Hebert in investigative custody pursuant to Terry v. Ohio, Hall deceived Singleton into producing the paraphernalia, which then provided probable cause for him to search the car, where he discovered the methamphetamine. ' (State’s brief, at p.. 15.) Both arguments fail to support the trial court’s ruling because Hall did not have the necessary reasonable suspicion to detain Hebert after the traffic stop had concluded.
The State’s characterization of Hebert’s detention as an ongoing Terry investigation or a “reasonable suspicion investigative custody (protective detention) of Hebert’s person pursuant to Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),” State’s brief, at 15, is not an accurate representation of the facts in the record. Hall’s testimony established that the purpose of the traffic stop had been completed and that hé had issued a citation to Hebert. The' custodial detention that followed was not part of an “ongoing” Terry investigation that somehow permissibly ripened into a combination of a Terry investigation and an officer-safety investigation permitted by Michigan v. Long.
In Michigan v. Long, the United States Supreme Court held:
“[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on ‘specific and articulable facts which, taken together with the rational inferences from those facts, • reasonably warrant’ the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. See Terry, 392 U.S., at 21, 88 S.Ct., at 1880. ‘[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.’ Id., at 27, 88 S.Ct., at 1883.”
463 U.S. at 1049-50 (footnote omitted).
Furthermore, Terry holds that a protective search is permissible only if there is a reasonable belief that the suspect is armed and. presently dangerous. Terry, 392 U.S. at 30. The United States Supreme Court in Terry further explained:
“The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, *926 neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search ‘warrant a man of reasonable caution in the belief that the action taken was appropriate? Cf. Carroll v. United States, 267 U.S. 132 (1925); Beck v. State of Ohio, 379 U.S. 89, 96-97 (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e.g., Beck v. Ohio, supra; Rios v. United States, 364 U.S. 253 (1960); Henry v. United States, 361 U.S. 98 (1959). And simple ‘good faith on the part of the arresting officer is not enough.’ .... If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be ‘secure in their persons, houses, papers and effects,’ only in the discretion of the police.’ Beck v. Ohio, supra, at 97.”
Terry, 392 U.S. at 21-22 (footnotes omitted).
The record belies any argument that the ongoing detention after the traffic stop was based on Hall’s reasonable belief that Hebert had weapons in the car and that he was dangerous. During his testimony at the hearing, Hall listed several reasons for detaining Hebert after he had issued the traffic citation, and he listed those reasons in various combinations. Those reasons, in whatever combination Hall listed them at various points in his testimony, were based on Hall’s stated concern for his safety. Hall testified that he was concerned for his safety because Hebert appeared to want to return to his car quickly, because he was uncertain about what Hebert might have had inside the vehicle, because Hebert had been very nervous during the traffic stop, because Hebert had been carrying four folding knives, and because of Hebert’s past criminal record.[1]
Even before Hall began writing the traffic citation he was aware of Hebert’s criminal history and that Hebert had been in possession of four folding knives, yet after he patted down Hebert’s person, Hall did not search inside the vehicle in the area within Hebert’s wingspan. Rather, Hall did not stop Hebert and place him in handcuffs based on any safety concerns until after Hall had issued the traffic citation, had asked for consent to search the car, and had. been denied consent to search. Thus, the primary reasons for Hall’s. safety concerns existed before the traffic stop, was completed, but Hall acted on those concerns only after Hebert had denied Hall’s- request for consent to search. “A defendant’s ultimate refusal to consent to a search of the vehicle cannot be considered as a factor in the officer’s determination of reasonable suspicion.” Peters, 859 So.2d at 454.
Furthermore, Hall’s stated concern that Hebert had additional weapons in the vehi *927 cle does not rise to the level of reasonable suspicion in light of the fact that, after he placed Hebert in handcuffs, he permitted Singleton to return to the car by herself and to reach under the seat, where she would have had access to any weapons inside the car. Finally, when Hall explained why he had detained Hebert, he stated that officers are taught to be cautious during traffic stops because .“anybody can get caught in an area where they can get a weapon, they could do harm to me if I’m by myself trying to get them oyt of a vehicle.” . (R. 17) (emphasis added). Hebert had fully cooperated with Hall when Hall directed him to get out of the vehicle and to stand behind it while Hall completed the citation. There clearly was no possible risk of harm to Hall as a result of difficulty getting Hebert out of the vehicle.
The facts available to Hall when he prevented Hebert from returning to his vehicle and placed him in the patrol car in handcuffs did not reasonably warrant a belief that Hebert was armed and dangerous and that the seizure was necessary to protect Hall’s safety. Therefore, we conclude that Hall did not have sufficient reasonable suspicion to detain Hebert following the traffic stop. The trial court erred when it denied Hebert’s motion to suppress. The judgment is reversed and the cause is remanded to the circuit court for proceedings consistent with this- opinion.
REVERSED AND REMANDED.
KELLUM and BURKE, JJ., concur.
WINDOM, P.J., and JOINER, J., concur in the result.

. The State did not present evidence at the hearing about Hebert's prior record, or about the reason Hall's computerized search listed Hebert as a medium threat level. The record includes the State's notice of intent to introduce prior convictions in the event Hebert testified at trial, however, and that notice included a 2002 conviction for first-degree possession of marijuana; a 2003 conviction for first-degree possession of a forged instrument; and a 2009 conviction for first-degree possession of marijuana.