In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00126-CR
______________________________


MARK WALLACE, JR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 76th Judicial District Court
Morris County, Texas
Trial Court No. 51-03


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            A petit jury found Mark Wallace, Jr., guilty of the offense of possession of marihuana in trial
court cause number 9095. See Tex. Health & Safety Code Ann. § 481.121(b)(4) (Vernon 2003). 
The jury assessed Wallace's punishment at eighty years' imprisonment and a fine of $10,000.00.


 
The jury also found Wallace guilty of possession of phencyclidine (PCP) in trial court cause number
51-03. See Tex. Health & Safety Code Ann. § 481.102(8) (Vernon Supp. 2005), § 481.115(b)
(Vernon 2003). In that case, the jury assessed Wallace's punishment at twenty years' imprisonment
and a fine of $10,000.00.


 The cases were tried together, appealed separately, and briefed together
on appeal. 
            In a single point of error applicable to both appeals, Wallace contends the trial court erred
in denying Wallace's motion to suppress because the arresting officer did not testify at the
suppression hearing about specific, articulable facts that would support a finding the officer had
reasonable suspicion to initiate the traffic stop in question. We affirm.
I. Standard of Review 
            A trial court's decision to admit or exclude evidence is reviewed on appeal for abuse of
discretion. Wilks v. State, 983 S.W.2d 863, 866 (Tex. App.—Corpus Christi 1998, no pet.). In
conducting this review, we afford almost total deference to a trial court's determination of historical
facts and the application of law to fact questions that turn on credibility and demeanor, but we review
de novo the trial court's application of law to fact questions that do not turn on credibility or
demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Stated differently, we give
almost total deference to the trial court in determining what the actual facts are, and we then review
de novo whether those facts are sufficient to provide legal justification for obtaining the
complained-of evidence. Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). If the trial
court does not make explicit findings of historical facts, as is the case here, we review the evidence
before the trial court at the time of its ruling in the light most favorable to that ruling. Walter v.
State, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000).
II. Did the Trial Court Err By Denying Wallace's Motion To Suppress Evidence?
            At the hearing on Wallace's motion to suppress, Barry Washington of the Texas Department
of Public Safety, Highway Patrol Division, testified he remembered making a traffic stop of a vehicle
driven by Wallace on October 11, 2002. Washington testified he had originally stopped Wallace for
failing to signal a lane change, for failing to drive in a single lane, and for changing lanes when
unsafe on Interstate 30 (although Washington did not cite Wallace for this latter violation). Then,
in response to questions from Wallace's defense attorney, Washington continued:
A. . . I had looked out the rearview mirror and observed the Wallace
vehicle change lanes without using a signal, and then we went down -- they went
down the road, and we got in behind that particular vehicle, and that vehicle hit the
center stripe, and he came back, and it was like he was nervous or something, and he
changed lanes in front of the vehicle that was traveling in front of him.
 
QSo initially, you were stopped on the shoulder, the vehicle passed, and
you looked in your rearview mirror. You looked in your rearview mirror the initial
time that you saw this alleged failure to signal the lane change the first time you saw
it in your rearview mirror.
 
AI believe that's correct.
 
QAnd did you have to do a U-turn to follow him?
 
ANo.
 
QThen it's your testimony that as you approached the vehicle, he had
changed lanes again in front of a vehicle?
 
AHe changed lanes without using caution, to the point that the other
vehicle's brake lights came on because when he went in front of the other vehicle, the
other vehicle had to slow for him to do it because he was that close.
 
QAnd where was your vehicle in context to this lane change? Where
were you? How far back?
 
AWe had pulled off the improved shoulder, the westbound shoulder,
and got in behind the vehicle when he didn't change lanes as he approached our patrol
unit.
 
QSo you were ahead of the vehicle, ahead of Mr. Wallace's vehicle,
looked in your rearview mirror, saw the first change of lanes, rolled off the shoulder,
and observed the second lane change, correct?
 
AThat's correct.
 
                        Q         Approximately how far apart were the two vehicles when that change
was made?
 
AProbably -- I explained to Mr. Wallace that day it was less than two
car lengths, which we usually stop a person for following too close. Probably a car
length or less.
 
QSo less than two car lengths?
 
AYes.

(Emphasis added.)

            Wallace now contends the trooper's testimony is insufficient to support the trial court's ruling. 
Wallace cites Ford v. State, 158 S.W.3d 488 (Tex. Crim. App. 2005), in support of his contention
that the trial court erred. In Ford, the Texas Court of Criminal Appeals reiterated the well-settled
maxim that 
[a]n officer conducts a lawful temporary detention when [the officer] has reasonable
suspicion to believe that an individual is violating the law. Reasonable suspicion
exists if the officer has specific, articulable facts that, when combined with rational
inferences from those facts, would lead [the officer] to reasonably conclude that a
particular person actually is, has been, or soon will be engaged in criminal activity.
Id. at 492. The court then described the officer's testimony at Ford's suppression hearing as too
conclusory, too opinionated, and too devoid of sufficient, specific facts to support the officer's
opinion. The evidence was insufficient because the officer had stated only that Ford was "following
too close." Id. at 493. Therefore, the trial court erred by denying Ford's motion to suppress. Id. The
court commented: 
The record reveals an absence of any facts allowing an appellate court to determine
the circumstances upon which [the officer] could reasonably conclude that Ford
actually was, had been, or soon would have been engaged in criminal activity. 
Instead, the trial court was presented only with a conclusory statement that Ford was
violating a traffic law. We do not quarrel with the notion that [the officer] may have
in fact believed that Ford was following another car too closely. Nor do we dispute
that the trial judge is free to believe or disbelieve [the officer's] testimony. But
without specific, articulable facts, a court has no means in assessing whether this
opinion was objectively reasonable.

Id. The court then reversed Ford's conviction. Id. at 494.
            The record before us presents facts that clearly distinguish this case from Ford. "An operator
on a roadway divided into two or more clearly marked lanes for traffic: . . . (2) may not move from
the lane unless that movement can be made safely." Tex. Transp. Code Ann. § 545.060(a)(2)
(Vernon 1999). As outlined above, Washington testified that, when Wallace changed lanes, he
pulled his vehicle in front of another car and caused the driver of this second car to have to apply
the brakes because Wallace was too close. Washington also told the trial court that those two
vehicles were "[p]robably a car length or less" apart when Wallace made the lane change. This
officer's testimony presents clear, concrete facts from which the trial court could determine whether
the officer did indeed have "specific, articulable facts," which when viewed under the totality of the
circumstances could lead the officer to reasonably conclude Wallace had violated a traffic law. 
Thus, the evidence in this case is not merely that the officer said, "I saw the defendant commit
violation X," with no explanation of the facts underlying the alleged violation. Instead, the evidence
in this case is that the officer described certain acts he observed Wallace commit that could lead the
officer to conclude Wallace violated a traffic law.
            We conclude that the record from the suppression hearing contains sufficient, articulable
facts from which the trial court could have determined Trooper Washington's initial detention of
Wallace was objectively reasonable under the totality of the circumstances. The trial court did not
err in denying Wallace's motion to suppress. 
            We overrule Wallace's sole point of error and affirm the trial court's judgment.



                                                                        Jack Carter
                                                                        Justice


Date Submitted:          November 30, 2005
Date Decided:             December 20, 2005

Do Not Publish