COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-07-135-CR

 

 

LUIS JESUS DE-LOS-SANTOS, JR.                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                               STATE

 

                                              ------------

 

             FROM THE 89TH DISTRICT
COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

ON
APPELLANT=S
PETITION FOR DISCRETIONARY REVIEW

 

                                              ------------

 








Pursuant to Texas Rule of
Appellate Procedure 50, we withdraw our November 1, 2007 opinion and judgment
and substitute the following.  See Tex. R. App. P. 50.  We write to address appellant Luis Jesus De-Los-Santos=s claim on
petition for discretionary review that we erroneously gave too much deference
to the findings and conclusions made by the trial court after the suppression
hearing in light of the purportedly contrary evidence on the video tape of the
stop.  On original submission, we ordered
that the video tape of the stop be forwarded to this court.  We received it and reviewed it.  But De-Los-Santos argues on petition for
discretionary review that a seperate Aenhanced video@ of the stop
prepared by a defense expert (Defendant=s Exhibit 1)
purportedly shows that the rear license plate lights on De-Los-Santos=s vehicle were
clearly working properly.[2]  Consequently, on petition for discretionary
review ordered this additional video forwarded to us.  We have reviewed it, and it is identical to
the video of the stop introduced by the State, State=s Exhibit 1.  To the extent any enhancement techniques were
utilized in or presented to the trial court, none are present or observable on
Defendant=s Exhibit 1. 
Accordingly, our opinion, as set forth below, remains unchanged.

I.  Introduction

Appellant Luis
Jesus De-Los-Santos appeals his conviction for driving while intoxicated with a
child passenger under the age of fifteen. 
In one issue, De-Los-Santos challenges the trial court=s denial of his
motion to suppress.  We will affirm.

 








II.  Factual and Procedural Background

On the night of May 19, 2006,
Officer Patrick McFerrin was stopped at a stop sign while on traffic patrol
when he observed a vehicle drive past him with one of its two rear license
plate tag lights not working.  Believing
that a traffic violation was being committed, Officer McFerrin pulled over the
vehicle and made contact with De-Los-Santos, the driver.  Because Officer McFerrin detected the odor of
alcohol coming from De-Los-Santos, Officer McFerrin administered field sobriety
tests, all of which De-Los-Santos failed. 
Officer McFerrin then arrested De-Los-Santos for driving while
intoxicated (DWI). 

After arresting
De-Los-Santos, Officer McFerrin allowed Shay Wylie, who was a passenger and the
vehicle=s owner, to drive the vehicle home. 
Because two of the vehicle=s passengers were toddlers, the State indicted De-Los-Santos for DWI
with a child passenger under the age of fifteen.  








De-Los-Santos filed a motion
to suppress.  The motion argued that the
trial court should suppress all of the evidence obtained during the traffic
stop because the stop constituted an unlawful, warrantless search based on
neither probable cause nor reasonable suspicion.  The trial court heard the testimony of three
witnesses at the suppression hearing. 
First, Officer McFerrin unwaveringly testified that one of the two tag
lights was not working when he initiated the traffic stop.  Second, Wylie testified that both of the rear
license plate tag lights were operating correctly before and after the
stop.  Third, a videographer, who studied
the recording made by the camera on board Officer McFerrin=s cruiser, testified that both of the license plate tag lights were on
while Wylie drove the car away after the arrest. 

Based on this testimony, the
trial court found that Officer McFerrin had reasonable suspicion to initiate
the traffic stop, and the trial court signed a written order denying the motion
to suppress.  De-Los-Santos subsequently
pleaded guilty and gave notice of his intent to appeal the denial of the motion
to suppress.  Upon De-Los-Santos=s request, the trial court made findings of fact and conclusions of
law.  De-Los-Santos now appeals.

III.  Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68
(Tex. App.CFort Worth
2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006). 
When the trial court makes explicit fact findings, we determine whether
the evidence, when viewed in the light most favorable to the trial court=s ruling, supports those fact findings.  Id. at 818B19.  We then review the trial
court=s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id. at 819.

 








IV.  The Constitutionality of the Traffic Stop
Under the Fourth Amendment

In his sole issue,
De-Los-Santos contends that the trial court improperly denied his motion to
suppress because Officer McFerrin=s initial stop violated the Fourth Amendment.  Specifically,
De-Los-Santos argues that because Officer McFerrin only had a brief opportunity
to view the rear license plate tag lights and because he did not take any steps
to verify the traffic violation before stopping De-Los-Santos, Officer McFerrin=s suspicion was not formed from inferences based on articulable facts
but was rather based on a mere hunch. 
Therefore, because a stop based on a hunch rather than articulable facts
violates the Fourth Amendment, De-Los-Santos concludes that his constitutional
rights were violatedCa violation
which the trial court should have cured by granting his motion to suppress
evidence seized as a result of the stop. 
See Williams v. State, 621 S.W.2d 609, 612 (Tex.  Crim. 
App.  1981) (panel op.).     A. 
The Requirements of a Constitutional Traffic Stop








The Fourth Amendment[3]
protects against unreasonable searches and seizures.  U.S. Const.
amend. IV.  To suppress evidence because
of an alleged Fourth Amendment violation, the defendant bears the initial
burden of producing evidence that rebuts the presumption of proper police
conduct.  Torres v. State, 182
S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488,
492 (Tex. Crim. App. 2005).  A defendant
satisfies this burden by establishing that a search or seizure occurred without
a warrant.  Torres, 182 S.W.3d at
902; Ford, 158 S.W.3d at 492. 
Once the defendant has made this showing, the burden of proof shifts to
the State, which is then required to establish that the government agent
conducted the search or seizure pursuant to a warrant or that the agent acted
reasonably.  Torres, 182 S.W.3d at
902; Ford, 158 S.W.3d at 492.








The Supreme Court has held
that a detention is reasonable under the Fourth Amendment if the government
agent reasonably suspects a person of engaging in criminal activity.[4]
 Terry v. Ohio, 392 U.S. 1, 22, 88
S. Ct. 1868, 1880 (1968); Carmouche, 10 S.W.3d at 328.  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific, articulable facts
that when combined with rational inferences from those facts, would lead the
officer to reasonably conclude that a particular person is, has been, or soon
will be engaged in criminal activity.  Ford,
158 S.W.3d at 492B93.  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Id. at 492.








Therefore, in stopping
vehicles for an investigative detention based on a traffic violation, the State
need not prove that the detainee actually committed a traffic violation.  Drago v. State, 553 S.W.2d 375, 377
(Tex. Crim. App. 1977); Manyou v. State, No. 05-05-00161-CR, 2006 WL
2664281, at *4 (Tex. App.CDallas Sept.
18, 2006, pet. ref=d) (not
designated for publication).  The State
must only show that the officer reasonably suspected that the driver was
committing a traffic violation. Woods, 956 S.W.2d at 36; Manyou, 2006
WL 2664281, at *4; Barrington v. State, No. 02-06-00215-CR, 2007 WL
495174, at *2 (Tex. App.CFort Worth,
Feb. 15, 2007, no pet.) (mem. op.) (not designated for publication).  If the State establishes reasonable
suspicion, then the stop does not violate the Fourth Amendment even if, upon
further investigation, it is discovered that no traffic violation actually
occurred.  See Drago, 553 S.W.2d
at 377; Manyou, 2006 WL 2664281, at *4.

B.  De-Los-Santos=s
Traffic Stop Comported with the Fourth                     Amendment

 

Because it is undisputed that
Officer McFerrin did not have a warrant when he pulled over De-Los-Santos, we
look to the State=s burden in
showing the reasonableness of Officer McFerrin=s detention of De-Los-Santos.  See
Torres, 182 S.W.3d at 902; Ford, 158 S.W.3d at 492.

De-Los-Santos argues that
Officer McFerrin did not have reasonable suspicion to initiate the traffic stop
because he did not verify his belief that one of the two license plate tag
lights was out.  The issue here, however,
is not whether De-Los-Santos committed a traffic violation; rather, the issue
is whether Officer McFerrin had reasonable suspicion to stop De-Los-Santos for a
traffic offense.  See Drago, 553
S.W.2d at 377; Manyou, 2006 WL 2664281, at *4.








Officer McFerrin testified
that, as De-Los-Santos passed him, he noticed that one of the vehicle=s tag light was not working. 
Officer McFerrin never wavered on the accuracy of his initial
observation that the tag light was non-operational.  Furthermore, De-Los-Santos did not elicit any
testimony that Officer McFerrin was acting on pretext.  

In addition to Officer
McFerrin, the trial court heard testimony from Wylie, (the owner of the
vehicle, a passenger at the time of the stop, and a friend of De-Los-Santos for
almost a decade) that no one had ever before informed her of the faulty tag
light.  Wylie also testified that during
the stop, she briefly stepped out of the vehicle and, from a Areal quick@
observation, thought that the disputed tag light was working.  Wylie finally testified that both lights were
working when she arrived home after the arrest. 








Finally, the trial court
heard testimony of a videographer hired by the defense who had enhanced the
cruiser video.  The expert testified that
in his opinion the license plate tag light was working at the time of the
stop.  The expert wavered, however,
during cross-examination and admitted that he was not 100% sure that the light
was working when De-Los-Santos passed Officer McFerrin.  The trial court also viewed the videotape of
the detention recorded by Officer McFerrin=s patrol car=s video
camera.  We likewise have review that
tape.[5]

Because during a suppression
hearing the trial court is the sole judge of the credibility of the witnesses
and the weight of their testimony, the trial court could have determined that
Officer McFerrin=s testimony
was more credible than Wylie=s and the videographer=s.  Ross, 32 S.W.3d at
855; Ballard, 987 S.W.2d at 891. 
Furthermore, the trial court explicitly found that Officer McFerrin
observed the vehicle driven by De-Los-Santos traveling in violation of the
Texas Transportation Code by failing to have the license plate clearly
illuminated and that the officer, therefore, had reasonable suspicion that a
traffic offense was occurring when he initiated the traffic stop.[6]  








De-Los-Santos relies on the Kimball
case to argue that Officer McFerrin should have done more, such as turning
off his headlights, to verify that one of the license plate tag lights was not
working.  Kimball v. State, No.
06-03-00236-CR, 2004 WL 2715392, at *1 (Tex. App.CTexarkana 2004, no pet.) (mem. op.) (not designated for
publication).  This argument, however,
overlooks our standard of review of the trial court=s ruling.  Because the trial
court made an explicit finding of fact that the license plate tag light was not
working at the time Officer McFerrin initiated the stop, our review is limited
to determining whether the evidence, when viewed in the light most favorable to
the trial court=s ruling,
supports that finding.  Kelly, 204
S.W.3d at 818.  Because it does, we
cannot say that the trial court erred by denying De-Los-Santos=s motion to suppress.  We
therefore overrule De-Los-Santos=s sole issue.

 

V.  Conclusion

Having overruled
De-Los-Santos=s sole
issue, we affirm the trial court=s judgment.

 

PER CURIAM

PANEL F:    WALKER, J.; CAYCE,
C.J.; and MCCOY, J.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: April 17, 2008

 











[1]See Tex. R. App. P. 47.4.





[2]No
video or DVD was included in the record filed with this court.





[3]Where,
as in this case, the appellant has not separately briefed state and federal
constitutional claims, we assume that the appellant claims no greater
protection under the state constitution than that provided by the federal
constitution.  Varnes v.  State, 63 S.W.3d 824, 829 (Tex. App.CHouston
[14th Dist.] 2001, no pet.).  Therefore,
we will analyze De-Los-Santos=s claim solely under the
Fourth Amendment of the United States Constitution, following guidelines set by
United States Supreme Court in interpreting the Fourth Amendment.  See State v. Guzman, 959 S.W.2d 631,
633 (Tex. Crim. App. 1998).





[4]Because
a routine traffic stop typically involves only a short, investigative
detention, as opposed to a custodial arrest, we analyze traffic stops under the
principles developed for investigative detentions set forth in Terry v. Ohio.  392 U.S. at 22, 88 S. Ct. at 1880; see
Berkemer v.  McCarty, 468 U.S. 420,
104 S.  Ct.  3138 (1984); Martinez v.  State, 236 S.W.3d 361, 369 (Tex.  App.CFort Worth 2007, no pet.).





[5]The
video does not show whether one of De-Los-Santos=s
license plate tag lights was out or not; the headlights from Officer McFarrin=s
patrol car so thoroughly illuminate the back of De-Los-Santos=s
vehicle that this fact cannot be ascertained from the video.





[6]Specifically,
the trial court found that A[o]n May 19, 2006, at or
around 9:00 p.m., Officer Patrick McFer[r]in . . . observed a brown Chevy
Blazer traveling with no license plate tag-light.@  The trial court noted, A[u]pon
conclusion of the hearing, this Court overruled [De-Los-Santos=s]
motion to suppress, finding by clear and convincing evidence that the officer
had reasonable suspicion that a traffic offense was occurring when he initiated
the traffic stop.@