NO. 07-07-0065-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 12, 2008
______________________________

ELIZABETH HILL, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

THE STATE OF TEXAS, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
Â Â Â Â Â Â Â Â Â Â _________________________________

FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-DC-05-300771; HON. BRENDA KENNEDY, PRESIDING
_______________________________

Memorandum Opinion
_______________________________
Â 
Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
Â Â Â Â Â Â Â Â Â Â Elizabeth Hill was convicted of murder and sentenced to thirty years in prison. She
appeals that conviction in four issues by 1) attacking the legal and factual sufficiency of the
evidence, 2) challenging the courtâs failure to instruct the jury that a negative finding on
sudden passion must be unanimous, and 3) attacking the sufficiency of the evidence to
prove sudden passion. We affirm.
Â 
Â Â Â Â Â Â Â Â Â Â Issues 1 and 2 - Legal and Factual Sufficiency
Â Â Â Â Â Â Â Â Â Â The standards by which we review legal and factual sufficiency are well established.
We refer the parties to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979) and Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006) for explanation of
them. 
Â Â Â Â Â Â Â Â Â Â The evidence at trial was uncontested that Hill shot and killed her husband Joseph
Lucas. She contended she did so, however, in self defense and as a result of an abusive
relationship. Hill argues that the evidence was sufficient to establish that defense. When
a defendant challenges the legal sufficiency of the evidence supporting the factfinderâs
rejection of self defense in a murder case, we do not look to whether the State presented
evidence that refuted the theory of self defense but instead determine whether any rational
trier of fact would have found the essential elements of murder beyond a reasonable doubt
and would have also found against the defendant on the issue of self defense beyond a
reasonable doubt. Miller v. State, 177 S.W.3d 177, 183 (Tex. App.âHouston [1st Dist.
2005, pet. refâd). Furthermore, at the time of trial, a person could use deadly force in her
own defense to the degree she reasonably believed the force was immediately necessary
to protect herself against the otherâs use or attempted use of unlawful force and if a
reasonable person in the actorâs situation would not have retreated. Tex. Pen. Code Ann.
Â§9.32(a) (Vernon 2003). 
Â Â Â Â Â Â Â Â Â Â The record shows that 1) appellant was perceived by persons who knew the couple
to have the stronger personality, 2) appellant was very angry over Joseph having
disciplined their son in an inappropriate manner


 and requested that he move out, 3) she
gave opposite stories to persons about whether the marriage was over or could be saved
after a joint counseling session, 4) during that counseling session, the counselor did not
perceive appellant to feel personally threatened by Joseph but found her to be concerned
that Joseph not take any of her personal belongings, 5) appellant called Joseph abusive
names during the counseling session but Joseph did not reciprocate and took responsibility
for his inappropriate behavior with his son, 6) although appellant testified she was afraid
of Joseph and asked a neighbor to be at the house when Joseph came to collect his
personal belongings, the neighbor never heard any arguments or raised voices while
appellant and Joseph were downstairs discussing finances and perceived the couple to be
friendly, 7) although appellant testified she was afraid of Joseph, she agreed to accompany
him alone upstairs to collect his belongings without asking the neighbor to accompany
them, 8) about 20 or 30 seconds after appellant and Joseph went upstairs, appellant began
screaming that Joseph should let go of her but the neighbor never heard sounds of a
struggle or Joseph say anything, 9) appellant continued to scream for several minutes, but
the neighbor never heard any sounds from Joseph until he heard an âugh,â 10) four shots
were fired into Joseph with two of them having a trajectory sharply downward, 11) forensic
evidence showed the first two shots were probably in the face and the hand which then
penetrated into Josephâs chest causing him to fall and the last two shots were fired into his
shoulder and head, 12) any of the four shots could ultimately have been fatal, 13) there
were no obvious signs of a struggle in the coupleâs bedroom or closet where Joseph was
found, 14) the blood spatter was found no higher than four feet above the ground and
blood spatter was consistent with Joseph being no higher than one and one-half to two feet
from the floor when he was shot in the head, 15) no blood was found outside of the closet,
16) appellant never saw a weapon on Joseph that night and appellant had never known
him to carry or own a weapon, 17) appellant had been a Travis County jailer and had
firearm training, 18) appellant had no visible blood, red marks, bruises, or scratches on her
after the murder, 19) a fellow prisoner stated that appellant told her she had antagonized
Joseph into attacking her and then shot him, 20) the detective questioning appellant
believed that her tears were forced since she tended to look at him for his reaction, 21)
appellant expressed no remorse to investigating officers over the death of her husband,
22) appellant informed her cell mate that she was âtrying to save her house through the
insurance on the husband,â and 23) appellant had previously disclosed to an officer that
she was not in an abusive relationship with her husband. The foregoing is some evidence
upon which a rational jury could conclude, beyond reasonable doubt, that appellant
murdered her husband and did not act in self-defense. 
Â Â Â Â Â Â Â Â Â Â Admittedly, there had been an incident that appellant reported to police in 1997
when Joseph had allegedly pushed appellant into the bed causing her to fall to the floor
and bruise herself. There was also expert testimony that appellant fell within the pattern
of an abused wife in spite of her outwardly stronger personality. Appellant herself
explained that she was so afraid of Joseph after she asked him to move out that she slept
with a gun under her pillow. During the incident, she averred that Joseph had pulled her
into the closet and locked her in a bear hug with his hand over her mouth while screaming
and threatening to kill her and their sons. She further stated that she kneed him in the
groin and, after he grabbed her leg, she reached for her gun in a shoe case (which she had
just placed in that location that morning) and shot Joseph twice. Two more shots were
fired inadvertently, according to her, after she fell in the outer closet and Joseph lunged at
her. Yet, this testimony and other of its ilk simply raised issues of credibility. And,
selecting the witness and testimony to believe falls within the bailiwick of the jury. For
instance, it was up to that body to decide whether appellant spoke truthfully when she
alleged that the decedent grabbed and screamed at her; again, the neighbor testified that
he heard no noises coming from Joseph except a final grunt. 
Â Â Â Â Â Â Â Â Â Â So, based on the entire record before us, we cannot say that the juryâs verdict is
supported by weak evidence or so against the great weight of the evidence as to
undermine our confidence in the outcome. Simply put, the evidence is both legally and
factually sufficient to uphold the verdict, and issues one and two are overruled.
Â Â Â Â Â Â Â Â Â Â Issue 3 - Charge Error
Â Â Â Â Â Â Â Â Â Â Appellant next complains of the trial courtâs failure to make clear to the jury in the
charge on punishment that a finding either for or against sudden passion must be
unanimous per Sanchez v. State, 23 S.W.3d 30, 34 (Tex. Crim. App. 2000). We overrule
the issue. 
Â Â Â Â Â Â Â Â Â Â Here, the trial court instructed the jury, via separate paragraphs, about its need to
decide whether or not appellant acted under sudden passion. So too did it inform the jury
of the range of punishment applicable in either situation. It subsequently closed its
instructions by telling the jurors that â[y]our verdict must each be unanimous.â (Emphasis
added). After deliberating, the jury returned one form addressing the matter of sudden
passion and another setting punishment. Under these circumstances, we conclude that
the trial court fulfilled its obligation in question through informing the jury that each verdict
must be unanimous. See Cartier v. State, 58 S.W.3d 756, 760 (Tex. App.âAmarillo 2001,
pet. refâd) (finding the general instruction that the verdict must be unanimous sufficient to
instruct the jury that its finding on sudden passion must be unanimous).
Â Â Â Â Â Â Â Â Â Â Issue 4 - Evidence to Support Sudden Passion
Â Â Â Â Â Â Â Â Â Â Finally, appellant argues that the jury finding against sudden passion was in error. 
It is not clear whether appellant is challenging the legal or factual sufficiency of the
evidence or both of them. However, appellant does not prevail under either one, and we
overrule the issue.
Â Â Â Â Â Â Â Â Â Â Â Sudden passion is passion directly caused by and arising out of provocation by the
individual killed which passion arises at the time of the offense and is not solely the result
of former provocation. Tex. Pen. Code Ann. Â§19.02(a)(2) (Vernon 2003). Next, adequate
cause is cause that would commonly produce a degree of anger, rage, resentment, or
terror in a person of ordinary temper sufficient to render the mind incapable of cool
reflection. Id. Â§19.02(a)(1). 
Â Â Â Â Â Â Â Â Â Â Evidence appears of record that, if believed, could support a finding of sudden
passion. Yet, the very same evidence depicting that appellant did not act in self-defense
also constitutes some evidence that she acted from cool reflection or otherwise planned
the murder. Again, there were no signs of a struggle in the bedroom or closet or on
appellant. Moreover, the only surviving witness at the scene, other than appellant, heard
no screams or threats purportedly uttered by Joseph, only those of appellant. This and
other matter of record tended to contradict appellantâs version of events. 
Â Â Â Â Â Â Â Â Â Â As already stated, the jury was free to disbelieve appellantâs story. Even if Joseph
had been abusive to appellant in the past, it had before it some evidence upon which it
could decide, beyond reasonable doubt, that appellantâs actions did not result directly from
or arise out of provocation at the time of the offense. And, we cannot say that the evidence
supporting such a decision was weak or overwhelmed by contrary evidence.
Â Â Â Â Â Â Â Â Â Â Having overruled all of appellantâs issues, we affirm the judgment of the trial court.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Per Curiam
Â 
Do not publish.
Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â 



format:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-08-0509.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-08-0509.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-08-0509.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-08-0509.cr%20opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("07-08-0509.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-08-0509.cr%20opinion_files/header.htm") f2;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
 /* List Definitions */
 @list l0
 {mso-list-id:597561621;
 mso-list-type:hybrid;
 mso-list-template-ids:2084104782 67698703 67698713 67698715 67698703 67698713 67698715 67698703 67698713 67698715;}
@list l0:level1
 {mso-level-tab-stop:none;
 mso-level-number-position:left;
 margin-left:1.0in;
 text-indent:-.25in;}
ol
 {margin-bottom:0in;}
ul
 {margin-bottom:0in;}
-->








NO. 07-08-00509-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL C

Â 



MARCH
31, 2010

Â 



Â 

TIMOTHY RAMBER, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

 FROM THE 137TH DISTRICT COURT OF LUBBOCK
COUNTY;

Â 

NO. 2008-418,717; HONORABLE CECIL G. PURYEAR, JUDGE



Â 



Â 

Before QUINN,
C.J., and HANCOCK and PIRTLE, JJ.

Â 

Â 

MEMORANDUM OPINION

Â 

Appellant, Timothy Ramber, appeals his conviction for the offense of driving
while intoxicated[1]
(DWI), third or more offense,[2]
enhanced by one prior felony conviction and subsequent sentence of 25 years in
the Institutional Division of the Texas Department of Criminal Justice
(ID-TDCJ).Â  By one issue, appellant
contends that the trial court committed reversible error in allowing the State
to use appellantÂs prior DWI convictions to elevate the current offense to
felony status.Â  We affirm.

Factual
and Procedural Background

Appellant was involved in an
automobile accident in Lubbock, Texas.Â 
As a result of the accident investigation, appellant was charged with
DWI.Â  Appellant was ultimately indicted
for DWI, third or more offense, with one prior felony alleged for punishment
enhancement.Â  AppellantÂs trial counsel
filed a motion to quash and an exception to the substance of the indictment.Â  The indictment against appellant contained
allegations of four prior DWI convictions, one from Galveston County, Texas, in
1994, and three from Matagorda County, Texas, in 1991.Â  In the motion, appellant argued that the
prior convictions used to elevate the DWI charge to a felony were the result of
pro se pleas and were not entered
knowingly and voluntarily.Â  Additionally,
the motion alleged that the prior convictions were obtained via plea
negotiations with the State and the use of these prior pleas violated the terms
of the agreement and, therefore, violated the contract between the appellant
and State.[3]Â  According to appellant, a violation of the
contract between himself and the State resulted in a constitutional violation
under the United States Constitution.Â  

The trial court conducted hearings on
appellantÂs motion to quash on September 22, 2008, and October 29, 2008.Â  During the September 22nd hearing,
appellant was called to testify about the facts surrounding his prior pleas of
guilty.Â  During his testimony, the
following occurred:

Q: And you dealt directly with the Â I guess the county attorney in
Matagorda?

A: Yes, sir.

Q: Okay.Â  And did he make some
promises to you in regards to those guilty convictions?

A: Well, I mean, he just said, ÂAs long as you donÂt get another one,
you know within ten years, it wonÂt be a felony,Â you know. 

Â 

At the hearing on October 29, 2008,
appellantÂs trial counsel called the former county attorney of Matagorda
County, Texas, to testify.Â  A number of
issues were discussed in his testimony, including:

1.Â Â Â  There was rarely a court reporter present to prepare a
record of any of the guilty pleas;

Â 

2.Â Â Â  Even though it was not his role to admonish defendants
who wished to plead guilty, because the County Judge was a layman, he did often
attempt to visit with the defendants about their rights before they appeared
before the judge;

Â 

3.Â Â Â  The only judicial admonishments he recalls the judge
giving defendants were to their waiver of an attorney, waiver of a jury trial,
and pleading guilty because they wanted to plead guilty;

Â 

4.Â Â Â  He never recalled telling any defendant that, if they
did not get another DWI for ten years, the plea they were entering would not be
used against them.

Appellant again testified at the
October 29th hearing.Â  Upon
this occasion, trial counsel framed the questions as:

Q: Did anyone ever make any representations to you
that if you went more than ten years without another DWI that it wouldnÂt be
used for enhancement purposes against you?

A: Yes, sir.

Q: And who told you that?

A: The man that offered, you know,
the plea.

Q: Okay.Â  And is that part of the
reason you decided to enter into the plea?

A: Yes, sir.

Â 

In addition to the testimony from the
former county attorney and appellant, the judgments in each of the three prior
pleas of guilty to DWI in Matagorda County were entered into the record.Â  There was, however, no reporterÂs record of
the prior pleas of guilty offered.Â  At
the conclusion of the hearing, the trial court overruled the motion and
appellant subsequently waived a jury and entered a plea of no contest to the
indictment before the court, without a recommendation as to punishment.Â  Appellant also entered a plea of not true to
the punishment enhancement paragraph of the indictment.Â  After hearing the evidence on punishment, the
trial court found the enhancement paragraph true[4]
and sentenced appellant to a term of 25 years confinement in the ID-TDCJ.Â  AppellantÂs right to appeal was certified by
the trial court.Â  Pursuant to that
certification, appellant presents one issue contending that the trial court
erred in allowing the use of the previous DWI convictions.Â  We disagree with appellant and affirm the
judgment of the trial court.

Standard
of Review

Â Â Â Â Â Â Â Â Â Â Â  The
trial courtÂs ruling on the motion to quash was based upon evidence it heard in
the form of testimony from appellant and the former county attorney of
Matagorda County, Texas.Â  There were also
documentary exhibits from each of the prior pleas of guilty entered into this
record.Â  The trial courtÂs ruling was an
application of the law to the facts established by this evidence.Â  Accordingly, we will apply a mixed standard
of review to the trial courtÂs denial of the motion to quash.Â  Under this standard, great deference is
accorded the trial courtÂs determination of historical facts.Â  See Ford v. State, 158 S.W.3d 488, 493 (Tex.Crim.App.
2005).Â  We use this deferential standard
because the trial court is in the best position to judge the credibility of the
witnesses.Â  See State
v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).Â  We do not, however, apply that same
deferential standard to an application of the law to the facts.Â  See Ford, 158
S.W.3d at 493.Â  These matters are
reviewed de novo.Â  See Guzman v. State, 955 S.W.2d 85, 87 (Tex.Crim.App.
1997).

Analysis

Â Â Â Â Â Â Â Â Â Â Â  AppellantÂs
sole contention on appeal is that the trial court erred in allowing appellantÂs
prior DWI convictions to be used to enhance the offense to a third degree
felony.Â  This is so, according to
appellant, because such use violated the agreement he entered into with the
State that, if appellant did not get another DWI within ten years, the
convictions could not be used to elevate a subsequent DWI to a felony.Â  Following appellantÂs theory,
the use by the State of the prior convictions to elevate the current DWI to a
third degree felony violated the Contracts Clause of the United States
Constitution.Â  See
U.S. Const. art. I, Â§ 10.

Â Â Â Â Â Â Â Â Â Â Â  Before
turning to the issue of the Contracts Clause, we note that, at the trial,
appellantÂs counsel specifically disavowed an intention to attack the
indictment on the basis that the use of the prior convictions operated as an ex post facto law.Â  Yet, appellantÂs brief spends a considerable
amount of time discussing this issue.Â  To
the extent appellant is attempting to interject this issue into the case, the
matter is not preserved for appeal.Â  See
Tex. R. App. P. 33.1(a).Â  Therefore, this issue is not before us in
this appeal.Â  See Swain v.
State, 181 S.W.3d 359, 367 (Tex.Crim.App.
2005).

Â Â Â Â Â Â Â Â Â Â Â  Appellant
contends that he had a plea agreement that included a specific promise by the
State that, if more than ten years passed before the occurrence of another DWI,
then the prior DWI could not be used to elevate the subsequent DWI.Â  To support that proposition, appellant refers
to his testimony at the pretrial hearing.Â 
In essence, appellant contends that the promises the county attorney for
Matagorda County, Texas, made at the time he entered his plea became part of
the plea agreement and cannot be violated by the State. 

Â Â Â Â Â Â Â Â Â Â Â  A
plea agreement is contractual in nature.Â 
Moore v. State, 295 S.W.3d 329, 331 (Tex.Crim.App. 2009).Â 
When the court accepts the plea agreement, the terms of the bargain
become binding upon all parties.Â  Ex parte Williams, 758 S.W.2d 785, 786 (Tex.Crim.App.
1988).Â  However, there are no
contractual rights to demand specific performance over terms not appearing in
the agreement or the record.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  The
record shows that the plea papers in all of the prior pleas of guilty were
presented to the court.Â  A review of
these documents reveals no promises by the State regarding the use of those
particular pleas in a subsequent DWI, within ten years or outside of ten
years.Â  Accordingly, the record fails to
support appellantÂs contention that the contract appellant contends was
breached by the State was ever entered into.Â 
The terms appellant attempts to impose on the State do not appear in the
record of the pleas.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  Further,
the trial court is in a better position to judge the demeanor and credibility
of the witnesses.Â  Ross, 32 S.W.3d at 855.Â 
Because of this fact, we afford great deference to the trial courtÂs
determination of historical facts.Â  See
Ford, 158 S.W.3d at 493.Â  In the case before the court, the trial court
did not file findings of fact and conclusions of law.Â  In the absence of findings of fact and
conclusions of law, we view the evidence in the light most favorable to the
trial courtÂs ruling and assume that the trial court made implicit findings of
fact that support its ruling so long as those findings are supported by the
record.Â  Ross, 32
S.W.3d at 353.

Â Â Â Â Â Â Â Â Â Â Â  Our
examination of the record does not support the contention of appellant.Â  The record reveals that the first time he
testified, September 22, 2008, all appellant stated
was that he was told that, if he did not get another DWI within ten years, a
subsequent DWI would not be a felony.Â  At
the later hearing of October 29, 2008, appellant answered yes to the following
question: ÂDid anyone ever make any representations to you that if you went
more than ten years without another DWI that it wouldnÂt be used for
enhancement purposes against you?ÂÂ 
According to appellant, the man that told him that was the former county
attorney for Matagorda County.Â  However,
when the former county attorney testified, he said that he did not recall ever
telling any defendant that, if they did not get another DWI for ten years, it
would not be used against them.Â  

The trial courtÂs ruling about the
historical facts, based upon his observation of the demeanor and credibility of
the witnesses, is supported by the record.Â 
Ross, 32 S.W.3d at 353.Â  If there was no plea agreement contract
regarding the future use of the DWI convictions, then the use of the prior DWI
convictions to elevate the current DWI to felony status could not violate the Contracts
Clause of the United States Constitution.Â 
See U.S.
Const. art. I, Â§ 10.Â  Based upon our de novo review of the trial courtÂs application of the law to the
record, appellantÂs single contention is overruled.Â  Guzman, 955 S.W.2d
at 87.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  Having overruled appellantÂs issue, the judgment of the
trial court is affirmed.Â  

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Do
not publish.Â Â  Â Â Â Â Â  








Â 











[1]
See
Tex. Penal Code Ann. Â§ 49.04(a) (Vernon 2003).

Â 





[2] See Tex.
Penal Code Ann. Â§ 49.09(b)(2) (Vernon Supp.
2009).





[3] At the time of the prior pleas, a previous DWI
conviction could not be used for enhancement purposes after ten years passed
between convictions.Â  See Acts
1993, 73rd Leg., R.S., ch. 900, Â§ 1.01, 1993 Tex. Gen. Laws 3697-98, repealed by
Acts 2005, 79th Leg., R.S., ch. 996, Â§ 3, 2005 Tex. Gen. Laws 3363, 3364 (current version at
Tex. Penal Code Ann. Â§ 49.09 (Vernon
Supp. 2009)). 





[4] Appellant challenges the use of the three prior DWI
convictions, but does not challenge the trial courtÂs finding of true on the
prior felony enhancement paragraph.